IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAURICE SCOTT,

   Plaintiff,

v.             No. CV 08-223 WJ/CEG

JNJ EXPRESS, INC. and
TONY JONES,

   Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on JNJ Express, Incorporated's ("JNJ") Motion to Dismiss for

Lack of Personal Jurisdiction, and Memorandum Brief in Support of said motion (docket nos. 7

and 8), filed April 11, 2008; Plaintiff Maurice Scott's ("Mr. Scott") Brief in Opposition to

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 9), filed April 25,

2008; JNJ's Reply in Support of its Motion to Dismiss (docket no. 14), filed May 5, 2008;

Plaintiff's Motion to Enlarge Discovery Through Depositions by Oral Examination and Motion

to Extend the Time in Which to Respond to Defendant's Motion to Dismiss (docket no. 25), filed

August 29, 2008; Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss

(docket no. 26), filed September 8, 2008; JNJ's Response in Opposition to Motion to Enlarge

Discovery and Extend Time to Respond to Motion to Dismiss (docket no. 28), filed September

11, 2008; and JNJ's Sur-Reply in Support of Defendant's Motion to Dismiss (docket no. 29),

filed September 15, 2008. For the reasons below, I find Plaintiff has not established that the

Court has personal jurisdiction over Defendant JNJ. As such, I recommend that JNJ's Motion to

Dismiss be granted, Plaintiff's Motion to Enlarge Discovery be denied, and Plaintiff's case be

dismissed without prejudice.

I. Background

A.  Factual Background

JNJ requests a dismissal of Plaintiff's claims based on lack of personal jurisdiction.  As the Tenth Circuit recently noted in <u>Dudnikov</u>, the extent of the plaintiff's burden depends in part on the way the trial court handles the motion to dismiss for lack of personal jurisdiction.  <u>See</u> <u>Dudnikov v. Chalk & Vermillion Fine Arts, Inc.</u>, 514 F.3d 1063, 1069 (10th Cir. 2008).  When the jurisdictional decision is based solely on the complaint and affidavits,[1] like in this case, the Court is to take as true all well-pled (that is plausible, non-conclusory, and non-speculative) facts alleged in the complaint.  <u>Id.</u> at 1070 (citing <u>Bell Atl. Corp. v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)).  Thus, the following facts are taken directly from Plaintiff's "Complaint for Money Damages and Personal Injury" ("Plaintiff's Complaint" or "Complaint") and are accepted as true for the purposes of this report:

On July 29, 2005, at approximately 12:34 p.m., Mr. Scott was traveling east on U.S. Highway 60 in Craig County, Oklahoma when his tractor trailer was rear-ended by a tractor trailer driven by Tony Jones ("Mr. Jones").  Docket no. 1 at 2.  Mr. Jones failed to keep a proper lookout when he rear-ended Plaintiff's vehicle.  <u>Id.</u> at 2.  Mr. Jones was acting within the course and scope of his employment with JNJ at the time of the collision.  <u>Id.</u>  Plaintiff resides in the City of Roswell, County of Chaves, in the State of New Mexico.  <u>Id.</u> at 1.  JNJ is a Tennessee corporation, and Mr. Jones resides in the State of Louisiana.  <u>Id.</u>  On the same day, Plaintiff was continuing eastbound on U.S. Highway 60 when his vehicle was struck by a vehicle driven by

---

[1]  The trial court can proceed on a personal jurisdiction decision in several ways including: (1) reference to only the complaint and affidavits, (2) a pre-trial evidentiary hearing, or (3) sometimes at trial itself.  <u>See</u> <u>Dudnikov</u>, 514 F.3d at 1069.

Ronnie Wood ("Mr. Wood").  Id. at 2.  Mr. Wood negligently crossed the center-line, causing

the collision.  Id.

B.  Procedural History and Arguments

On March 3, 2008, Mr. Scott filed his Complaint, naming JNJ, Mr. Jones, and Mr. Wood

as Defendants.  Docket nos. 1 and 2.[2]  Plaintiff's Complaint alleges jurisdiction pursuant to 28

U.S.C. § 1332(a)(2).  Id. at 1.  Plaintiff maintains Mr. Jones was negligent when he caused the

accident with Mr. Scott in Oklahoma and his negligence is imputed to JNJ under the doctrine of

respondeat superior.  Id.  Plaintiff "respectfully requests a reasonable award of damages,"

including past and future medical expenses, past and future pain and suffering, permanent

impairments and disabilities, loss of enjoyment of life, loss of past and future earnings and future

earning capacity, pre and post-judgment interest, costs, and "such other and further relief as the

Court deems just and proper."  Id. at 3.

On April 11, 2008, JNJ filed its Motion to Dismiss for Lack of Personal Jurisdiction and

Memorandum in support of the motion.  Docket nos. 7 and 8.  The motion initially states JNJ

"makes a special appearance with the sole and express purpose of making its jurisdictional

objection and seeking dismissal of this lawsuit."  Docket no. 7 at 1.  JNJ contends dismissal is

appropriate because the company did not transact business or commit a tort in New Mexico and

JNJ does not have the requisite minimum contacts with New Mexico to satisfy due process.  Id.

JNJ also claims it is not subject to jurisdiction under New Mexico's long-arm statute.  Id. at 2.

On March 25, 2008, Plaintiff filed his Brief in Opposition to JNJ's Motion to Dismiss.

Docket no. 9.  In sum, Plaintiff contends the Court does have personal jurisdiction over JNJ

---

[2]  Plaintiff, also on March 3, 2008, filed an identical Complaint, but attached a Civil
Cover Sheet.  See docket no. 2.

under the New Mexico long-arm statute.  Id. at 2-4.  Plaintiff cites to JNJ's website, which, according to Plaintiff, proclaims that JNJ "operates in 31 states," including New Mexico.  Id. at 3.  Plaintiff also notes that the highway on which the accident occurred "is a continuation of U.S. 40, the east-west route through New Mexico."  Id.  Plaintiff also requests an evidentiary hearing "to resolve the disputed jurisdictional factual issues."  Id. at 4-5.

On May 5, 2008, JNJ filed its Reply in Support of the Motion to Dismiss.  Docket no. 14. JNJ argues "'comprehensive' discovery must be rejected because a load passing through New Mexico cannot, as a matter of law, confer personal jurisdiction."  Id. at 2.  Additionally, JNJ states it "does not solicit business in New Mexico, does not advertise in New Mexico, and does not employ New Mexico drivers."  Id. at 4.  Finally, JNJ claims the evidentiary hearing requested by Plaintiff in his response "is unnecessary because Plaintiff's request is not supported by law."  Id.

On May 15, 2008, Plaintiff filed a Stipulation of Dismissal of Mr. Wood with prejudice. Docket no. 17.  On May 27, 2008, Plaintiff filed an Amended Stipulation of Dismissal of Mr. Wood.  Docket no. 18.  The Amended Stipulation states "Plaintiff hereby dismisses any and all claims against Defendant Ronnie Wood with Prejudice."  Id.  Thus, the only named Defendants remaining in the case are JNJ and Mr. Jones.[3]

On May 29, 2008, United States District Judge William P. Johnson issued an Order setting a telephonic hearing for June 10, 2008.  Docket no. 19.  The Order states the hearing is scheduled on JNJ's Motion to Dismiss for Lack of Personal Jurisdiction and that counsel for both sides "shall be prepared to address the scope of discovery that will be needed . . . to rule on

---

[3] The Court notes that at the time this report was entered, the docket sheet does not indicate that Mr. Jones has been served or that he is represented by counsel.

whether there is personal jurisdiction over Defendants." Id. at 1.  The telephonic hearing was

held on June 10, 2008.  Docket no. 21.  The District Judge, on the same day issued an "Order

Allowing Limited Discovery on the Issue of Personal Jurisdiction of Defendant JNJ Express,

Inc." Docket no. 20.  Specifically, the Order states that "[b]ecause the Court can neither confirm

nor deny the existence of personal jurisdiction at this time . . . Plaintiff may submit to Defendant

JNJ up to ten interrogatories and five requests for production of documents narrowly tailored to

the issue of whether the Court has personal jurisdiction over Defendant JNJ Express, Inc." Id.

          On June 24, 2008, Plaintiff filed a Certificate of Service, certifying that Plaintiff's First

Set of Interrogatories and Requests for Production was mailed to JNJ.  Docket no. 22.  On July

23, 2008, JNJ filed a Certificate of Service stating it had mailed its Answers and Responses to

Plaintiff's First Set of Interrogatories and Requests for Production.  Docket no. 23.  On August

12, 2008, the District Judge, noting the Certificates of Service mentioned above, entered an

Order requiring Plaintiff to file a memorandum supplementing his response to JNJ's Motion to

Dismiss by September 8, 2008.  Docket no. 24.

          On August 29, 2008, Plaintiff filed his Motion to Enlarge Discovery Through

Depositions by Oral Examination and Motion to Extend the Time in Which to Respond to

Defendant's Motion to Dismiss.  Docket no. 25.  Plaintiff "moves the Court for permission to

take a limited number of depositions in this case." Id. at 1.  Plaintiff states he "needs to take

only two depositions; one of the driver, Tony Jones, and one of the JNJ Company President and

CEO John Ennis . . . to fully determine" if the company's business activity in the State of New

Mexico establishes minimum contacts with the state and satisfies the New Mexico long-arm

statute. Id. at 3-4.  Plaintiff contends the company "drove a quarter million miles through New

Mexico, and paid fuel taxes of over $10,000 on those miles during 2004-2005." Id. at 3.

Plaintiff's motion also requests additional time to draft a supplemental response "in light of the fact that depositions have not been scheduled."  <u>Id.</u> at 4.

      On September 8, 2008, Plaintiff filed his Supplemental Brief in Opposition to JNJ's Motion to Dismiss.  Docket no. 26.  Plaintiff contends JNJ's fleet of trucks traveled 41,148 miles through New Mexico in 2004 and 211,160 miles through New Mexico in 2005.  <u>Id.</u> at 4. Plaintiff states the company paid International Fuel Tax Agreement ("IFTA") taxes of $1954.00 in 2004 and $8124.00 in 2005.  <u>Id.</u>  Plaintiff concludes by asserting: "Defendant injured a New Mexico resident in Oklahoma.  The company purposely availed itself to the State through its overall business activities here."  <u>Id.</u> at 5-6.

      On September 11, 2008, JNJ filed its Response in Opposition to Plaintiff's Motion to Enlarge Discovery and Extend Time to Respond to the Motion to Dismiss.  Docket no. 28.  JNJ's Response contends Plaintiff's request for additional discovery "is speculative and is not aimed at resolving any jurisdictional issue before this Court."  <u>Id.</u> at 5.  Defendant contends that Mr. Scott "asks this Court to require defense counsel to travel more than 1,000 miles and compel the CEO to answer questions about the load hauled by Unit 145 and the route traveled between Shreveport, LA and Salina, KS," and that the "request offends due process."  <u>Id.</u>  Defendant further states that Mr. Jones is no longer employed by the company and thus JNJ "has no control over Defendant Jones."  <u>Id.</u> at 3.

On September 29, 2008, JNJ filed a Sur-Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction.  Docket no. 29.  In the Sur-Reply, JNJ contends Plaintiff's general jurisdiction argument is flawed because "he misunderstands the IFTA reports."  <u>Id.</u> at 4.  JNJ asserts the IFTA is an agreement among all states (except Alaska and Hawaii) and the Canadian provinces (except the Northwestern Territories, Nunavut, and Yukon) to simplify the taxation of

fuel used by motor carriers.  Id.  Under the IFTA, according to JNJ, a carrier registers with the

"base jurisdiction" and files one return with that jurisdiction, disclosing the amount of fuel

consumed and the miles traveled in each jurisdiction.  Id.  Regardless of Plaintiff's "IFTA

confusion and interpretation," according to JNJ, Plaintiff's "expansive view of jurisdiction

obviously runs afoul of due process considerations and would have a chilling effect on interstate

commerce" as "[s]imply driving through New Mexico cannot constitute 'continuous and

systematic general business contacts,' sufficient to confer jurisdiction as a matter of law."  Id. at

4-5.

On September 22, 2008, the District Judge entered an Order formally referring JNJ's

Motion to Dismiss for Lack of Personal Jurisdiction "and any pending and subsequent motions

filed in this case" to the undersigned to "submit her analysis, including findings of fact, if

necessary, and recommended disposition, to the District Judge assigned to the case."  Docket no.

30.

## II. Standard of Review

"The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal

jurisdiction is well established: 'The plaintiff bears the burden of establishing personal

jurisdiction over the defendant.'"  See Dudnikov, 514 F.3d at 1069.  Where a court chooses not

to conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of

jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support

jurisdiction over the defendants.  Soma Medical Intern. v. Standard Chartered Bank, 196 F.3d

1292, 1295 (10th Cir. 1999); OMI Holdings, Inc. v.. Royal Ins. of Canada, 149 F.3d 1086, 1091

(10th Cir. 1998).  The allegations of a complaint must be taken as true unless contradicted by the

defendant's affidavits.  See Behagen v. Amateur Basketball Ass'n. of U.S.A., 744 F.2d 731, 733

(10th Cir. 1984). To the extent conflicting affidavits are presented, all factual disputes are to be resolved in favor of the plaintiff. Id.

III. Analysis

A. Defendant JNJ's Motion to Dismiss

The issue is whether the Court has jurisdiction over JNJ, a Tennessee corporation, in this case involving an accident that occurred in Oklahoma between a Louisiana-domiciled employee of JNJ and Plaintiff, a resident of New Mexico. "To obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show that (i) jurisdiction is legitimate under the laws of the forum state and that (ii) the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment." Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (internal quotations omitted). Thus, jurisdiction is appropriate only if (i) a non-resident is subject to the New Mexico personal jurisdiction law, and (ii) the exercise of personal jurisdiction over a nonresident defendant comports with Due Process.

1. New Mexico Long-Arm Statute

New Mexico's long-arm statute provides:

§ 38-1-16. Personal service of process outside state

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

(2) the operation of a motor vehicle upon the highways of this state;

(3) the commission of a tortious act within this state;

(4) the contracting to insure any person, property or risk located

8

within this state at the time of contracting;

(5) with respect to actions for divorce, separate maintenance or annulment, the circumstance of living in the marital relationship within the state, notwithstanding subsequent departure from the state, as to all obligations arising from alimony, child support or real or personal property settlements under Chapter 40, Article 4 NMSA 1978 if one party to the marital relationship continues to reside in the state.

* * * *

C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

N.M.S.A.1978, § 38-1-16.  The New Mexico long-arm statute is co-extensive with constitutional limitations that the Due Process Clause imposes.  See Emberton v. Rutt, No. CIV 07-1200-JB/RLP, 2008 WL 4093714, at *3-4 (D.N.M. March 31, 2008) (citing Tercero v. Roman Catholic Diocese, 132 N.M. 312, 316, 48 P.3d 50, 54 (N.M. 2002)).  If jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a non-resident defendant.  Id.

To satisfy the requirements of the New Mexico long-arm statute, the Court must conduct a three-prong test: (i) did JNJ commit an act or omission set forth in § 38-1-16; (ii) does Mr. Scott's cause of action arise out of the alleged acts or omissions; and (iii) does JNJ have sufficient minimum contacts with New Mexico to satisfy due process concerns.  See Tercero, 48 P.2d at 54.

a.  First Prong – Did JNJ Commit an Act or Omission Set Forth in § 38-1-16?

In this case, Plaintiff admits New Mexico's long-arm statute must be satisfied before JNJ can be hailed into a New Mexico court, and also admits the only possible section of § 38-1-16 that could apply is (A)(1), the transaction of any business within this state.  See docket no. 26 at 2.  New Mexico may have jurisdiction over a defendant who "transacts business" in New

Mexico within the meaning of N.M.S.A. 1978, § 38-1-16(A)(1).  In <u>Monks Own. Ltd. v.</u>

<u>Monastery of Christ In Desert</u>, 142 N.M. 549, 168 P.3d 121 (2007), the Supreme Court of New

Mexico explained that "[t]ransaction of any business . . . is defined as doing a series of similar

acts for the purpose of realizing a pecuniary benefit, or otherwise accomplishing an object, or

doing a single act for such purpose with the intention of thereby initiating a series of such acts."

<u>Id.</u> at 128 (internal quotations omitted).  The Court must look to the facts of each case to

determine "if the transaction of business category is met."  <u>Id.</u>

Plaintiff urges the Court to apply the factors enumerated in <u>Pelton v. Methodist Hosp.</u>,

989 F.Supp. 1392 (D.N.M. 1997), and used by Illinois courts, for determining whether certain

conduct constitutes the transaction of business under New Mexico's long-arm statute.  Those

factors include "(1) who initiated the transaction; (2) where the transaction was entered into; and

(3) where the performance was to take place."  <u>Id.</u> at 1394.  The parties have engaged in

discovery in this case.  Plaintiff admits the discovery has shown: the President of JNJ initiated

the transaction that put Mr. Jones on the road on July 29, 2005; JNJ owned the tractor and trailer

in question; according to Mr. Jones, the load was driven through Louisiana, Arkansas,

Oklahoma, and Kansas; no documents exist to confirm or deny the trip information and the route

is derived from Mr. Jones' memory; and Mr. Jones never paid any IFTA fuel taxes for driving

his assigned JNJ truck through New Mexico in 2004 or 2005.  Docket no. 26 at 3.

Given Plaintiff's assertion that JNJ's trucks traveled in New Mexico during the year the

accident in this case occurred, the undersigned will assume without further analysis and for the

sake of argument that JNJ has transacted business in this state, and will move on to the second

prong of the test laid out in <u>Tercero</u>.

    b.  Second Prong – Does Mr. Scott's Cause of Action Arise Out of JNJ's Transaction of
Business in New Mexico?

    Mr. Scott claims Defendant was negligent when Mr. Jones, who was employed by JNJ at
the time, was involved in an accident with Plaintiff in Oklahoma.  JNJ has produced sworn
discovery responses indicating that on the day of the accident, Mr. Jones reported that he
traveled from Shreveport, Louisiana to Salina, Kansas, going through the states of Louisiana,
Arkansas, Oklahoma, and Kansas.  <u>See</u> docket no. 28, exhibit A at 2.  The "evidence" Plaintiff
has cited in attempting to meet his burden of establishing personal jurisdiction are his claims
that:  JNJ's website proclaims the company "operates in 31 states," and posts a map of its
operating territory, which includes New Mexico; U.S. Highway 60 is a continuation of U.S.
Highway 40, an east-west route running through New Mexico; JNJ's fleet of trucks traveled
41,148 miles through the State of New Mexico in 2004, and 211,160 in 2005; and JNJ paid
$1924.00 in 2004 and $8124.00 in 2005 "in IFTA taxes for this business activity."  <u>See</u> docket
no. 9 at 3-4; docket no. 26 at 4-5.  None of this evidence demonstrates that JNJ's alleged
negligence relating to the July 29, 2005 accident arises out of JNJ's extremely limited
transaction of business in New Mexico.  Thus, the Court finds Plaintiff has failed to satisfy the
second prong of the <u>Tercero</u> test.  Nevertheless, the Court will also address the final prong of the
test.

    c.  Third Prong – Does JNJ have Sufficient Minimum Contacts with New Mexico to
Satisfy Due Process Concerns?

    New Mexico decisions have consistently recognized its courts may exercise personal
jurisdiction over a non-resident defendant only if sufficient minimum contacts exist between the
defendant and the forum state, meaning "the degree to which [the] defendant purposefully
initiated activity within the State."  <u>Sanchez v. Church of Scientology</u>, 115 N.M. 660, 664, 857

P.2d 771, 775 (1993) (internal quotations omitted).  "The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  Id.  The "minimum contacts" standard may be met in two ways.  Specific jurisdiction exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  General jurisdiction, on the other hand, lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 and n. 9 (1984).[4]

The Court finds the exercise of jurisdiction over Defendant JNJ in this case would not be proper because JNJ does not have sufficient minimum contacts with New Mexico to satisfy due process concerns.  Defendant has submitted the affidavit of John Ennis, its President, who has sworn that JNJ "is not and has never been licensed to do business in New Mexico," "has never billed an individual or business in New Mexico," "does not register or garage any of its equipment within New Mexico," does not own any real or personal property in New Mexico, and in 2005, "four one-hundredths of one percent (.04%) of its business for the year was unsolicited business done [in New Mexico] through a broker located in a state other than New

---

[4] "If a defendant has 'continuous and systematic contacts with [New Mexico] such that the defendant could reasonably foresee being haled into court in that state for any matter, [then] New Mexico has general personal jurisdiction and the plaintiff need not demonstrate a connection between the defendant's contacts and the cause of action.'" Emberton, 2008 WL 4093714 at *5 (quoting Zavala v. El Paso County Hosp. Dist.,, 143 N.M. 36, 42, 172 P.3d 173, 179 (N.M. Ct. App. 2007)).  Whether specific or general jurisdiction is asserted, the Court must confirm that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

Mexico." Docket no. 8, exhibit A at 2. The suit did not arise out of JNJ's activities within the state. In addition, JNJ has no continuous or systematic contacts within New Mexico to support general jurisdiction. As such, JNJ's conduct and connection with New Mexico are insufficient to constitute minimum contacts.

Even if minimum contacts existed, the Court would consider whether the assertion of personal jurisdiction over Defendant would offend traditional conceptions of fair play and substantial justice. This determination is made by balancing five factors: (i) the burden on the defendant; (ii) the forum's interest; (iii) the plaintiff's interest; (iv) the interest in an efficient judicial system; and (v) the interest in promoting public policy. See Zavala, 172 P.3d at 179 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 467-77 (1985)). While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. See OMI Holdings, 149 F.3d at 1096. The primary factor weighs heavily in favor of JNJ. With respect to the second factor, there is no indication that New Mexico's interest in resolving the dispute is any stronger than Oklahoma's or Tennessee's. The third factor weighs in Mr. Scott's favor. The fourth factor, however, examines whether the forum state is the most efficient place to litigate the dispute in light of the location of the witnesses, the location of the wrong, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. See Trujillo v. Williams, 465 F.3d 1210, 1221-1222 (10th Cir. 2006). Although it is unclear as to what substantive law governs, the location of the wrong is Oklahoma, and a majority of the witnesses would also presumably be from Oklahoma. There is no danger of piecemeal litigation because the entire matter may be litigated in Oklahoma or Tennessee. The fifth factor is not relevant in that the exercise of personal jurisdiction in this case would not affect the substantive social

13

policy concerns of Oklahoma or Tennessee.  Thus, the Court finds exercising personal

jurisdiction over JNJ in this case would offend traditional notions of fair play and substantial

justice.

Plaintiff has not satisfied the requirements of the New Mexico long-arm statute;

therefore, he has not met his burden of establishing personal jurisdiction over JNJ.  Plaintiff,

who has the ultimate burden of a prima facie showing of jurisdiction, cites to no case law

indicating that personal jurisdiction is proper over a non-resident trucking company that drives

through New Mexico or pays IFTA taxes to New Mexico.  If personal jurisdiction could be

established by the mere act of traversing another state's highways, the underlying concerns of

due process would be defeated, namely, that "it is reasonable and fair to require [a defendant] to

conduct [its] defense in that state."  Time Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d

61, 63 (3rd Cir. 1984).  For the reasons stated above, Defendant's Motion to Dismiss should be

granted.

B.  Plaintiff's Motion to Enlarge Discovery and Extend the Time in Which to Respond

A plaintiff may request limited discovery for the purpose of establishing personal

jurisdiction.  Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1077 n. 5 (10th Cir. 1995).  In this

case, the District Judge, on Mr. Scott's motion, has already allowed Plaintiff to submit to JNJ ten

interrogatories and five requests for production of documents narrowly tailored to the issue of

whether the Court has personal jurisdiction over the Defendant, and JNJ has complied with the

discovery.  Plaintiff now "moves the Court for permission to take a limited number of

deposition" and "for an extension of time . . . to respond to Defendant's Motion to Dismiss for

Lack of Personal Jurisdiction so that the deposition transcripts can be incorporated into the Brief

and admitted as Exhibits."  Docket no. 25 at 1.  Specifically, Plaintiff "moves for leave to take

the depositions of JNJ employees John Ennis . . . and driver Tony Jones" so he can "determine how the company, or the driver, was able to recollect the trip route, after three years, in the absence of records." Id. at 1, 2.

The docket sheet in this case does not indicate that Mr. Jones, a Louisiana resident, has been served by Plaintiff. Thus, he is not represented in this litigation. Additionally, JNJ has represented in its pleadings that Mr. Jones is no longer employed by JNJ. See docket no. 28 at 3. As a result, Defendant JNJ and this Court have no ability to compel Mr. Jones' attendance at a deposition, even if the Court found it to be appropriate discovery, which it does not in light of the discovery Plaintiff has already been awarded in this case. See Fed. R. Civ. P. 45 (discussing the 100 mile limit for independent witnesses). Plaintiff's request to depose John Ennis, who has already submitted his affidavit in this case, in order to determine "the nature of the contract that put Defendant Tony Jones on the road on the incident date . . ." is unreasonable and beyond the scope of the limited discovery Plaintiff is entitled to in this personal jurisdiction dispute. See docket no. 25 at 3. JNJ has already informed Plaintiff that no written contract exists. Docket no. 8, exhibit A at 4. Plaintiff is also already aware that the load was being delivered to a Kansas customer when the accident occurred in Oklahoma. Id., exhibit A at 2. Plaintiff asks the Court to require defense counsel to compel the President of JNJ to answer questions about a load hauled by a former employee and the route the former employee traveled between Shreveport, Louisiana and Salina, Kansas. I find this request violates due process concerns.

The parties have conducted some discovery in this case and nothing in the record or in Mr. Scott's allegations suggests that JNJ has continuous and systematic contacts with New Mexico or that an exercise of general jurisdiction might be appropriate. As such, the Court recommends that Plaintiff's Motion to Enlarge Discovery and to Extend the Time in Which to

15

Respond should be denied.

C.  Conclusion

For the above reasons, I find the Court lacks personal jurisdiction to hear Plaintiff's claims against JNJ.  The record clearly establishes the alleged actions of JNJ did not create minimum contacts with New Mexico and that the exercise of personal jurisdiction over JNJ would offend traditional notions of fair play and substantial justice.  Also for the reasons stated above, I find Plaintiff is not entitled to further discovery in this case.  Therefore, I recommend JNJ Express, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 7) be GRANTED.  I further recommend that Plaintiff's Motion to Enlarge Discovery Through Depositions by Oral Examination and Motion to Extend the Time in Which to Respond to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 25) be DENIED.  Plaintiff's "Complaint for Money Damages and Personal Injury" (docket nos. 1, 2) should be dismissed without prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the Proposed Findings and Recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____

UNITED STATES MAGISTRATE JUDGE